# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 18-0289V
UNPUBLISHED

| | |
|---|---|
| MARY SWEARER,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | **Chief Special Master Corcoran**<br><br>**Filed:** October 30, 2019<br><br>Special Processing Unit (SPU); Findings of Fact; Site of Vaccination; Onset; Statutory Six Month Requirement; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

**Amber Diane Wilson**, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.

**Kyle Edward Pozza**, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On February 23, 2018, Mary Swearer filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a vaccine-related injury to her left shoulder after receiving an influenza ("flu") vaccination on November 14, 2016. Petition at 1, ¶¶ 1, 15. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find the flu vaccination alleged as causal was administered in Petitioner's left deltoid, the onset of Petitioner's shoulder injury related to

---

[1] Because this unpublished ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

vaccine administration ("SIRVA") occurred within 48 hours of vaccination, and Petitioner suffered the residual effects of her injury for more than six months. Regarding the onset of Petitioner's pain, I find she suffered pain immediately upon vaccination.

## I.     Relevant Procedural History

Shortly after filing her petition, Ms. Swearer filed medical records, her affidavit, and other documentation. Exhibits 1-9, filed Feb. 28, 2018, ECF No. 8. Petitioner also filed a motion seeking subpoena authority for all employment and medical records, including a more detailed record of vaccination, from her former employer, Davita-Sweetwater Ridge Dialysis ("Davita Dialysis"). ECF No. 7. Petitioner's motion and a second request in late March 2018[3] were granted. On May 7, 2018, Petitioner filed a "Return of Non-Service," indicating service had been attempted and refused twice on April 10, 2018. ECF No. 12.

During the August 20, 2018 initial status conference, the parties discussed Petitioner's inability to obtain her employment and medical records, including a more detailed record of vaccination and the medical record from treatment Petitioner alleges she received the following day from a nurse practitioner at Davita Dialysis. *See* Order, issued Aug. 22, 2018, at 1-2, ECF No. 16; Exhibit 7 at ¶ 7, ECF No. 8-8 (Petitioner's Affidavit). As proof of vaccination, Petitioner filed what appears to be a page from her work calendar or personnel file indicating she received flu vaccines on October 28, 2015 and November 14, 2016. Exhibit 1, ECF No. 8-2. To support her allegations regarding treatment she received from the nurse practitioner at Davita Dialysis, Petitioner filed documentation from her myCIGNA account showing she purchased a methyl prednisolone dosepack on December 7, 2016. Exhibit 8 at 1, ECF No. 8-9. At the conclusion of the call, counsel agreed to work together to determine if the outstanding records could be obtained. *See* Order at 2, ECF No. 16. On November 9, 2018, Petitioner filed her gynecological medical records and medical records obtained from the Davita Dialysis clinic in response to a joint letter from the parties. Exhibits 10-11, ECF No. 20.

In early March 2019, the parties filed separate status reports addressing whether the required medical records had been filed in this case. Respondent provided a list of medical records he believed were outstanding. ECF No. 21. Petitioner countered that all available medical records had been filed. ECF No. 22. She indicated that updated medical records from recent treatment would be forthcoming and that there appears to be a factual issue in this case due to the unavailability of a more complete record of vaccination. *Id.* A call was scheduled in the case.

During the April 5, 2019 call, the parties agreed to request a fact ruling in this case. *See* Order, issued Apr. 5, 2019, at 2, ECF No. 23. On June 6, 2019, Petitioner filed

---

[3] Initially, Petitioner requested subpoena authority from the registered agent of Davita Dialysis. ECF No. 7. In her second motion, Petitioner indicated she had been informed that registered agent did not maintain records on behalf of Davita Dialysis. A second request was thus made for subpoena authority to be served on the clinic. ECF No. 11.

updated medical records, a copy of her workers' compensation file, affidavits from her husband and daughter, and a supplemental affidavit from herself.  Exhibits 12-16, ECF No. 24.  The next day, she filed her motion for a fact ruling.  ECF No. 25.  Petitioner requests rulings on the site of vaccination, onset of her pain, and ongoing sequalae.  *Id.* at 1.

On July 22, 2019, Respondent filed his response.  ECF No. 27.  He argues that Petitioner has failed to provide preponderant evidence that she received the vaccination alleged as causal in her left deltoid, that the onset of her pain occurred immediately as alleged, and that she suffered the residual effects of her injury for more than six months.  *Id.* at 9-10.  Petitioner filed her reply on July 29, 2019.  ECF No. 28.

The matter is now ripe for adjudication.

## II.    Issue

At issue is whether (a) Ms. Swearer received the vaccination alleged as causal in her injured left arm, (b) her first symptom or manifestation of onset after vaccine administration (specifically her pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and aids to interpretation ("QAI") for a Table SIRVA, and (c) she continued to suffer the residual effects of her SIRVA for more than six months.  42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI); § 11(c)(1)(D)(i) (statutory six month requirement).

## III.    Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1).  A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period."  Vaccine Act § 13(b)(2).  "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table."  *Id.*

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record.  Vaccine Act § 13(b)(1).  "Medical records, in general, warrant consideration as trustworthy evidence.  The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium.  These records are also generally

contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### IV. Findings of Fact

I make the findings in this ruling after a complete review of the record to include all medical records, affidavits, and additional evidence filed. Specifically, I base the findings on the following evidence:

- The workday record provided by Petitioner indicates she received a flu vaccination, administered at the Davita Dialysis clinic, on November 14, 2016. Exhibit 1 at 1.

- A Teammate Injury Report signed by the Facility Manager and Petitioner's supervisor at Davita Dialysis, Jose Ramos, confirms that on November 15, 2016, Petitioner reported limited range of motion ("ROM") in her left shoulder after receiving a flu shot the previous day, November 14, 2016. Exhibit 5 at 1.

- Medical records from Petitioner's primary care provider ("PCP") show that on the morning of December 21, 2016, Petitioner sought treatment for her left shoulder pain from her primary care provider, Pinnacle Family Medicine. Exhibit 4 at 16. At this visit, Petitioner described sharp and deep left shoulder pain which started four weeks prior after receiving a flu shot. Petitioner also relayed that she had been seen by a nurse practitioner who prescribed prednisone which caused her symptoms to subside. *Id.*

- In her first affidavit, filed on February 28, 2018, Petitioner alleges that, in addition to reporting her injury to her employer the next day, she was evaluated by a nurse practitioner at Davita Dialysis and prescribed a Medrol dose pack. Exhibit 7 at ¶¶ 6-7. In her supplemental affidavit, filed on June 6, 2019, Petitioner clarifies that she reported her left shoulder injury to her supervisor, Jose Ramos, on November 15, 2016, and discussed her injury with the nurse practitioner, who wrote her a prescription for oral steroids, on December 7, 2016. Exhibit 16 at ¶¶ 7, 10.

- Documentation from Petitioner's myCigna – Claims reveals Petitioner purchased a methylprednisolone dosepack on December 7, 2016. Exhibit 8 at 1.

- The medical record from a visit to Karin O'Clair, D.O. at Concentra during the afternoon of December 21, 2016, related to Petitioner's workers' compensation claim documents that Petitioner complained of a left shoulder injury, described as pain and limited ROM, after a flu shot administered in her left shoulder. Exhibit 2 at 7-8. In the history she provided at that appointment, Petitioner indicated that the vaccination hurt more than usual when administered and that she was unable to move her arm when she awoke the next morning. *Id.* at 8. "When asked where the injection was

4

placed, [Petitioner] indicate[d] a location close to the subacromial bursa." *Id.* Petitioner was prescribed medication and physical therapy ("PT") and referred to an orthopedist specialist. *Id.* at 7.

- The Concentra medical records specify that Petitioner visited the physical therapist later that same day, December 21, 2016. Exhibit 2 at 29-31. At that visit, Petitioner reported worsening pain, rated as seven on a scale of ten, and decreased ROM following receipt of an influenza vaccination on November 14. Exhibit 2 at 29-30. She was assessed as having adhesive capsulitis following an adverse reaction to a vaccine. *Id.* at 30. Petitioner attended five more PT sessions from December 23, 2016 until January 5, 2017. Exhibit 2 at 12-26. During this time, the ratings Petitioner provided for her pain levels decreased from seven to zero to one on a scale of ten. *Id.* at 13, 16, 19, 22.

- The medical records from Concentra establish that Petitioner returned for a follow-up appointment with Richard Burger, M.D. on December 29, 2016. Exhibit 2 at 4-6. Dr. Burger referenced Petitioner's the earlier orthopedic referral, indicating it would be "further refined to request an upper extremity specialist." *Id.* at 5.

- The Concentra medical records demonstrate Petitioner was seen by orthopedist Mark Greenfield, D.O. on January 6, 2017. Exhibit 2 at 59. At that visit, Petitioner provided the same history she had previously provided of left arm pain and an inability to lift her arm the day after receiving the influenza vaccination. She rated herself as 70 to 80 percent improved. *Id.* After examining Petitioner, Dr. Greenfield noted normal rotation but "pain with abduction." *Id.* at 60. He referred her to Dr. Burger "for final disposition" and instructed her to continue with her home exercise program ("HEP"). *Id.*

- The medical record from Petitioner's next and last visit to Concentra on January 12, 2017, indicates she "still had some discomfort with raising her arm overhead . . . [but] is tolerating regular duty without difficulty." Exhibit 2 at 2. It was noted that she "was released from care as maximum medical improvement was reached." *Id.* at 1.

- In her first affidavit, Petitioner indicates that she "had regained most of [her] range of motion" at this time . . . [but] "continued to have pain in [her] shoulder with specific movements, especially reaching overhead" and pain which inferred with her sleep. Exhibit 7 at ¶¶ 16-17. In her supplemental affidavit, Petitioner acknowledged her pain had decreased and her ROM had greatly improved but maintained she was still guarding her shoulder due to increased pain and had difficulty performing daily activities. Exhibit 16 at ¶¶ 16-17.

- Medical records from The Core Institute indicate Petitioner sought treatment again for left shoulder pain and stiffness on August 5, 2017. Exhibit 3 at 6. She described her injury as resulting from an influenza vaccination

5

administered into the subacromial bursa, eventually resulting in frozen shoulder. While acknowledging that she was able to get "quite a bit" of her ROM back following six PT sessions, Petitioner claimed she "never had complete pain relief." *Id.* She rated her current level of pain as ten out of ten and indicated that "some of her motion has diminished." *Id.* The physical examination revealed some limited ROM to 150/150 for elevation and 40/40 in external rotation and decreased strength, 4+ for both elevation and external rotation, contrasted with the full strength of 5 shown for Petitioner's right arm. *Id. at 7.* X-rays were performed, and Petitioner was referred for an MRI. *Id.* at 8.

- The results of Petitioner's MRI, performed on August 25, 2017, reveal a low-grade partial-thickness articular sided tear of the distal subscapularis, mild tendinopathy of the distal supraspinatus and infraspinatus tendons without evidence of rotator cuff tear, and effacement and edema consistent with adhesive capsulitis. Exhibit 6 at 6-7.

- The medical records also show Petitioner visited The Core Institute once more, on September 11, 2017. Exhibit 6 at 2. At that visit, Petitioner repeated her claim of left shoulder pain following receipt of the influenza vaccination ten months previously. She added that she had not had a steroid injection but had attended PT, which she claimed had not helped. Petitioner rated her current pain at a level of ten out of ten. *Id.* The physical examination revealed a further reduction in Petitioner's ROM to 110/130 for elevation and 30/30 for external rotation and the same decreased strength observed on August 5, 2017. *Id.* at 3. A "left subacromial injection was performed." *Id.* at 4.

- In her supplemental affidavit, Petitioner claims that she did not pursue further medical treatment, from late January 2017 through July 2018, because of an "extremely uncomfortable" work environment attributed to the new manager who replaced Jose Ramos. Exhibit 16 at ¶ 19. She asserts she decided to pursue treatment with a second orthopedist, rather than return to Concentra, due to these difficulties and following a vacation with her family when her limitations became more obvious. *Id.* at ¶¶22-23. In their affidavits, Petitioner's husband and daughter maintain Petitioner continued to experience pain and difficulty performing daily activities during the year after vaccination. Exhibits 14-15.

The above medical record entries show that Petitioner consistently connected her left shoulder injury to a flu vaccination administered in her left deltoid on November 14, 2016, and reported the onset of her pain as immediate, causing an inability to lift her arm by the next day. Exhibit 2 at 2, 5, 8, 29, 60; Exhibit 3 at 6; Exhibit 4 at 16; Exhibit 6 at 2. Documentation such as the Teammate Injury Report signed by the facility administrator Jose Ramos, the receipt for a methyl prednisolone dosepack, and medical records showing Petitioner was referred to Concentra by her employer due to her workers' compensation claim support Petitioner's allegations. Exhibit 5 at 1; Exhibit 8 at 1.

6

In particular, it is unrealistic for Petitioner's employer, Davita Dialysis, where she is said to have received the vaccination in question, to have entertained her workers' compensation claim, sending her for treatment at Concentra, without adequate documentation establishing Petitioner did in fact receive an influenza vaccination in her left deltoid on the date in question, November 14, 2016. Her employer's reaction, as well as the consistent reports found in medical histories provided by Petitioner, close in time to her vaccination for the purposes of obtaining medical care, are sufficient to support petitioner's allegations regarding the site of vaccination and onset of her pain.

**Accordingly, I find there is preponderant evidence to establish the flu vaccination alleged as causal in this case was administered to Petitioner in her left deltoid on November 14, 2016, and that the onset of Petitioner's pain and limited ROM occurred within 48 hours of vaccination. Specifically, I find the onset of petitioner's pain occurred immediately upon vaccination.**

Regarding the sequelae of Petitioner's left shoulder injury, the medical records establish that petitioner showed great improvement in her ROM and reduction in her pain levels after six PT sessions. Exhibit 2 at 13, 16, 19, 22. However, when Dr. Greenfield examined Petitioner, the day after her last PT session, he observed left shoulder pain with abduction. *Id.* at 60. The medical record from Petitioner's last visit to Concentra, on January 12, 2017, clearly indicates Petitioner continued to experience discomfort when raising her left arm. *Id.* at 2.

Petitioner's allegation of a hostile work environment after Jose Ramos resigned as facility supervisor is credible. Exhibit 16 at ¶ 19. The fact that Petitioner was unable to obtain her medical and employment records from Davita Dialysis, even after subpoena authority was granted and Respondent agreed to help with this endeavor, supports her allegations. Given this environment and the significant improvement Petitioner had shown after only six PT sessions, it is reasonable for Petitioner to have assumed she could continue to improve without formal treatment.

Likewise, Petitioner's assertion that she decided to pursue a second opinion after noticing her limitations during vacation is realistic. More importantly, when she sought medical treatment, she again related her symptoms to the influenza vaccination she received on November 14, 2016. Exhibit 6 at 2. Although provided by Petitioner, these histories were recounted within nine months of vaccination for the purpose of obtaining medical care. Furthermore, the results of the August 25, 2017 MRI show findings consistent with her earlier left shoulder injury and adhesive capsulitis. Exhibit 6 at 6-7.

In addition, although the affidavits from Petitioner's husband and daughter set forth allegations made at the present time, they nevertheless provide some support for Petitioner's assertion that she continued to suffer the effects of her injury as they are made by individuals other than the Petitioner in this case. Exhibits 14-15.

**I therefore find there is preponderant evidence to establish that Petitioner suffered the residual effects of her injury for more than six months. Specifically, I find Petitioner suffered the effects of her injury at least through September 2017.**

### V. Scheduling Order

Given my findings of fact regarding the site of vaccination, onset of Petitioner's pain, and sequelae of Petitioner's injury, Respondent should evaluate and provide his current position regarding the merits of Petitioner's case.

**Respondent shall file a Status Report regarding his current position by no than Monday, December 02, 2019.**

**IT IS SO ORDERED.**

                                              **s/Brian H. Corcoran**
                                              Brian H. Corcoran
                                              Chief Special Master